Town of Grand Chute, Plaintiff-Respondent, v. City of Appleton, Defendant-Appellant.†

Court of Appeals

*No. 79–144. Submitted on briefs June 26, 1979.—*
*Decided July 12, 1979.*
(Also reported in 282 N.W.2d 629.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *David G. Geenen,* city attorney, of Appleton.

For the plaintiff-respondent the cause was submitted on the brief of *Roger W. Clark* and *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

Before Dean, P.J., Donlin, J., and Foley, J.

DONLIN, J.   The City of Appleton adopted an interim extraterritorial zoning ordinance affecting lands in the Town of Grand Chute.  This ordinance was adopted pursuant to sec. 62.23 (7a), Stats.  When Appleton adopted this ordinance, the Outagamie County Zoning Ordinance was effective in the Town of Grand Chute.  The Appleton extraterritorial zoning ordinance provided:

That the hereinafter described area . . . is hereby zoned to continue the existing county Zoning Ordinance in effect, provided however that any property having zoning which is not in accordance with actual use, shall be limited to the actual use in existence or the actual zoning, whichever is more restrictive . . . .

Grand Chute commenced this action to have the ordinance declared invalid.  The adoption of the ordinance was alleged to be an abuse of the Appleton Common Council's discretion.  The ordinance was alleged to exceed Appleton's powers under the enabling legislation.  These issues were tried to the court by stipulation of the parties.

The trial court determined that the common council did not abuse its discretion in enacting the ordinance.  It did find, however, that the ordinance exceeded Appleton's interim extraterritorial zoning powers under sec. 62.23 (7a), Stats.  The court declared the ordinance invalid

insofar as it exceeded Appleton's powers under the enabling statute. Appleton appeals from that portion of the judgment.[1]

The sole issue on appeal is whether a city's interim extraterritorial zoning ordinance can restrict the land uses within the zoned area to the more restrictive of the actual uses or the zoning in effect when the ordinance is adopted.

Section 62.23(7a) (b), Stats., provides:

> The governing body may enact, without referring the matter to the plan commission, an interim zoning ordinance *to preserve existing zoning or uses* in all or part of the extraterritorial zoning jurisdiction while the comprehensive zoning plan is being prepared. [Emphasis added.]

This enabling statute allows cities and villages to freeze existing zoning or uses in order to avoid unplanned development. These freezes are authorized only while a comprehensive zoning plan is being prepared. The ordinance here purported to preserve existing zoning or uses, whichever was more restrictive. When the interim ordinance was adopted, much of the land was vacant but was zoned commercial.

Appleton argues that it should be allowed to preserve an existing use if it is more restrictive than the zoning. Therefore, its officials had been instructed to approve building permits only for single-family residences in the subject area. The city building inspector has refused to approve any permits for commercial development of the area.

---

[1] The respondent's brief states that there are two questions to be considered by this court on appeal. The second question is said to be whether the ordinance unlawfully delegated authority. This issue was not presented to the trial court, and will not be considered for the first time on appeal. *Hopper v. City of Madison,* 79 Wis.2d 120, 256 N.W.2d 139 (1977).

Grand Chute argues that the statute allows existing uses to be frozen only where there is no zoning. If there is zoning, Grand Chute contends that only the zoning, and not the uses, can be frozen.

Section 62.23 (7a) (b), Stats., is capable of being understood by reasonably well-informed persons in two different senses. It is thus ambiguous.[2] In construing an ambiguous statute, the court may consider the statute's legislative history, if one is available, in order to ascertain the intent of the legislature.[3] The aim of all statutory construction is to discern the intent of the legislature.[4]

The statute in question was created by ch. 241, Laws of 1963. The 1961 Legislature directed the Urban Problems Committee of the Legislative Council to study land use and controls. That committee drafted what eventually became ch. 241, Laws of 1963.[5]

The original draft of the enabling statute authorized preservation of existing uses in the extraterritorial zoning area. It did not refer to preservation of existing zoning. This draft was amended at a meeting of the Urban Problems Committee held on October 1, 1962. At that meeting, the draft was amended to read "preserve existing *zoning or* uses." [Emphasis added.] This proposed draft was adopted after the committee had discussed at an earlier meeting whether only uses should be

[2] *E.g., Estate of Walker,* 75 Wis.2d 93, 248 N.W.2d 410 (1977).

[3] *E.g., Robinson v. Kunach,* 76 Wis.2d 436, 251 N.W.2d 449 (1977). *See also State v. Genova,* 77 Wis.2d 141, 252 N.W.2d 380 (1977).

[4] *Milwaukee County v. DILHR,* 80 Wis.2d 445, 259 N.W.2d 118 (1977).

[5] *Minutes,* WIS. LEGIS. COUNCIL URBAN PROBLEMS COMMITTEE (Aug. 20 and Oct. 1, 1962); WIS. LEGIS. COUNCIL, vol. 3, GENERAL REPORT 129, *et seq. See also Walworth County v. City of Elkhorn,* 27 Wis.2d 30, 133 N.W.2d 257 (1965).

frozen or whether zoning should be frozen, if any zoning was in effect.[6] A committee member pointed out that "the interim ordinance merely freezes the districts and regulations of an existing town or county ordinance or freezes existing uses . . . ."[7] "[Z]oning or" appears in the statute as enacted and manifests this intent.

The committee also discussed whether towns should be given authority to veto proposed interim ordinances. It was pointed out that, inasmuch as existing town zoning was preserved, there would be nothing for the town to approve.[8]

■

The statute should be construed as to give meaning to every word.[9] The word "or" is disjunctive, not conjunctive like "and." Reading the statute in the disjunctive is consistent with the concerns expressed in the committee deliberations.[10] Under these circumstances, the court cannot disregard the legislature's choice of "or."

■

The trial court correctly determined that Appleton's position had no support in the legislative history. If there is zoning, sec. 62.23(7a)(b) allows interim zoning freezes and, if not, it allows interim "uses" freezes. It does not allow the city to freeze the more restrictive of the zoning or uses.

*By the Court.*—Judgment affirmed.

---

[6] *Minutes, supra* at 3–6 (Aug. 20, 1962).

[7] *Minutes, supra* at 6 (Oct. 1, 1962).

[8] *Id.*

[9] *Estate of Walker,* n. 2 *supra.*

[10] *See GENERAL REPORT,* n. 5 *supra* at 137: "Whatever land uses the county or town had designated by ordinance, or usage, would be effective for the 2-year period. It was believed that these features of the bill would result in minimal disruption to the towns affected and would still permit the development of a comprehensive zoning ordinance." This portion of the report is also quoted in *Walworth County v. City of Elkhorn,* 27 Wis.2d 30, 36, 133 N.W.2d 257, 261 (1965).